UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS MICHAEL PALUZZI,<br><br>    Petitioner,<br><br>  v.<br><br>A. P. KANE, warden,<br><br>    Respondent.<br>                                     / | No. C 06-801 SI (pr)<br><br>**ORDER DENYING HABEAS PETITION** |

## INTRODUCTION

Louis Michael Paluzzi, a prisoner at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Louis Michael Paluzzi was convicted in San Bernardino County Superior Court of second degree murder with use of a firearm. He was sentenced to a term of 17 years to life prison in 1980. His habeas petition does not concern that conviction directly, but instead focuses on a September 23, 2003 decision by a panel of the Board of Prison Terms ("BPT") finding him not suitable for parole.

The BPT identified several factors in support of its determination that Paluzzi was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if he was released. The factors identified included the circumstances of the offense, his

pre-offense criminality, and his history of unstable social relationships. The specifics regarding the crime and the circumstances supporting the finding of unsuitability are described in the Discussion section later in this order.

Paluzzi sought relief in the California courts. The San Bernardino County Superior Court denied his petition for writ of habeas corpus in 2004 in a reasoned order. See Resp. Exh. 8. The California Court of Appeal summarily denied his petition for writ of habeas corpus and the California Supreme Court summarily denied his petition for review.

Paluzzi then filed his federal petition for a writ of habeas corpus. In his petition he alleged that his right to due process was violated because there was not sufficient evidence to support the decision to find him not suitable for parole. Respondent filed an answer. Paluzzi filed a traverse. The matter is now ready for a decision on the merits.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged action occurred at the Correctional Training Facility in Soledad, which is in Monterey County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000).  Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole.  See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

**DISCUSSION**

A.  Due Process Requires That Some Evidence Support a Parole Denial

A California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See Sass, 461 F.3d at 1127-28; Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979); Cal. Penal Code § 3041(b).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision.  Sass, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board.  Id. at 1128 (quoting Superintendent v. Hill, 472

1  U.S. at 455-56).  The "some evidence standard is minimal, and assures that 'the record is not so
2  devoid of evidence that the findings of the . . . board were without support or otherwise
3  arbitrary.'"  Id. at 1129 (quoting Superintendent v. Hill, 472 U.S. at 457).  The some evidence
4  standard of Superintendent v. Hill is clearly established law in the parole context for purposes
5  of § 2254(d).  Sass, 461 F.3d at 1129.
6         Furthermore, and of key importance, the parole board is not precluded from relying on
7  unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-
8  offense behavior in determining parole suitability.  See id. at 1129 (commitment offenses in
9  combination with prior offenses provided some evidence to support denial of parole).  The
10 familiar argument that the BPT cannot rely on these factors is based on the Ninth Circuit's
11 statements in Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), that suggested that the value of
12 the criminal offense fades over time as a predictor of parole suitability:  "The Parole Board's
13 decision is one of 'equity' and requires a careful balancing and assessment of the factors
14 considered. . . .  A continued reliance in the future on an unchanging factor, the circumstance
15 of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals
16 espoused by the prison system and could result in a due process violation."  Biggs, 334 F.3d at
17 916-17.  In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely
18 on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that
19 "[o]ver time . . . , should Biggs continue to demonstrate exemplary behavior and evidence of
20 rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and
21 prior conduct would raise serious questions involving his liberty interest in parole."  Id. at 916.
22 These statements were dicta and not clearly established federal law as set forth by the Supreme
23 Court, such that the state court's refusal to adopt the Biggs reasoning would be a decision
24 contrary to, or an unreasonable application of, clearly established federal law as set forth by the
25 Supreme Court.  The Ninth Circuit recently backed away from the Biggs statements, and
26 confirmed that these statements from Biggs were dicta and were inappropriate under § 2254.
27 See Sass, 461 F.3d at 1129.  "Under AEDPA it is not our function to speculate about how future
28 parole hearings could proceed."  Sass, 461 F.3d at 1129.

4

1      What little guidance has come from the Supreme Court suggests that judicial review should be extremely deferential to the original decision-maker in the parole context. In addition to the very low evidentiary standard that Superintendent v. Hill imposes, other Supreme Court comments suggest that the judiciary should be quite mindful of the subjective and predictive nature of a parole board's decision. See Greenholtz, 442 U.S. at 13. "No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmakers in predicting future behavior. Our system of federalism encourages this state experimentation." Id.; see also id. at 8.

      Past criminal conduct is not some arbitrary factor like eye color that has nothing to do with present dangerousness. Recidivism concerns are genuine. See Ewing v. California, 538 U.S. 11, 26 (2003) (O'Connor J.) (noting a report stating that over 60% of violent offenders were arrested again within three years of their release). California's parole scheme does not offend due process by allowing the BPT to predict that an inmate presents a present danger based on a murder he committed many years ago.

      Having determined that there is a due process right, and that some evidence is the evidentiary standard for judicial review, the next step is to look to state law because that sets the criteria to which the some evidence standard applies. One must look to state law to answer the question, "'some evidence' of what?"

B.     State Law Standards For Parole For Murderers In California

      California uses indeterminate sentences for most non-capital murderers, with the term being life imprisonment and parole eligibility after a certain minimum number of years. A first degree murder conviction yields a minimum term of 25 years to life and a second degree murder conviction yields a base term of 15 years to life imprisonment. See In re Dannenberg, 34 Cal. 4th 1061, 1078 (Cal.), cert. denied, 126 S. Ct. 92 (2005); Cal. Penal Code § 190. The upshot of California's parole scheme described below is that a release date normally must be set unless

5

various factors exist, but the "unless" qualifier is substantial.

A BPT panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a). Significantly, that statute also provides that the panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).

One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides: "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public."[1] The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). The panel may

---

[1] The listed circumstances tending to show <u>unsuitability</u> for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior. 15 Cal. Code Regs. § 2402(c). The listed circumstances tending to show <u>suitability</u> for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior. 15 Cal. Code Regs. § 2402(d).

6

1 consider all relevant and reliable information available to it. 15 Cal. Code Regs. § 2402(b).

2 The regulations contain a matrix of suggested base terms for several categories of crimes. 3 See 15 Cal. Code Regs. § 2403. For example, for second degree murders, the matrix of base 4 terms ranges from the low of 15, 16, or 17 years to a high of 19, 20, or 21 years, depending on 5 some of the facts of the crime. Some prisoners estimate their time to serve based only on the 6 matrix. However, going straight to the matrix to calculate the sentence puts the cart before the 7 horse because it ignores critical language in the relevant statute and regulations that requires him 8 first to be found suitable for parole.

9 The statutory scheme places individual suitability for parole above a prisoner's 10 expectancy in early setting of a fixed date designed to ensure term uniformity. Dannenberg, 34 11 Cal. 4th at 1070-71. Under state law, the matrix is not reached unless and until the prisoner is 12 found suitable for parole. Id. at 1070-71; 15 Cal. Code Regs. § 2403(a) ("[t]he panel shall set 13 a base term for each life prisoner who is found suitable for parole"). The California Supreme 14 Court's determination of state law in Dannenberg is binding in this federal habeas action. See 15 Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

16 The California Supreme Court also has determined that the facts of the crime can alone 17 support a sentence longer than the statutory minimum even if everything else about the prisoner 18 is laudable. "While the Board must point to factors beyond the minimum elements of the crime 19 for which the inmate was committed, it need engage in no further comparative analysis before 20 concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for 21 the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 22 616, 682-83 (Cal. 2002), cert. denied, 538 U.S. 980 (2003) ("[t]he nature of the prisoner's 23 offense, alone, can constitute a sufficient basis for denying parole" but might violate due process 24 "where no circumstances of the offense reasonably could be considered more aggravated or 25 violent than the minimum necessary to sustain a conviction for that offense").

26 / / /

27 / / /

28

C.      Some Evidence Supports The BPT's Decision In Paluzzi's Case

The BPT identified several factors supporting its decision to find Paluzzi unsuitable for parole, i.e., the circumstances of the offense, pre-offense criminality, in-prison behavior, and history of unstable social relationships. The San Bernardino County Superior Court upheld the decision in a reasoned order. Res. Exh. 8. The state court correctly identified the some evidence standard as the standard to apply in reviewing the BPT's decision. Id. at 3. And the court found that the circumstances of the offense were alone sufficient to deny parole. Because the San Bernardino County Superior Court's decision is the last reasoned decision, that is the decision to which 2254(d) applies. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005), cert. denied, 126 S. Ct. 2041 (2006).

   1.      Commitment Offense

The facts of the crime were recited by one of the commissioners from the record: On May 2, 1980,

> Paluzzi drove into [a gas station], where the victim, Albert Subt and his wife were parked due to car trouble. Paluzzi got out of his car and started pumping gas. For no apparent reason he then took out a 22 rifle, laid it on the roof of the automobile and fired once striking Subt in the head. Paluzzi put the rifle back into the car, finished filling the gas, replaced the gas nozzle, left the gas station without paying. He was arrested the next day following a high-speed reckless erratic car chase approximately four point two miles. The victim died two weeks later without regaining consciousness.

9/23/03 BPT hearing transcript ("RT") 10. Paluzzi agreed that these facts basically were correct but stated that he was under the influence of drugs at the time of the incident. See RT 10-11. The district attorney later argued that Paluzzi's contention that the behavior was drug-induced was a theory rejected by the jury. RT 47-48.

The BPT considered the circumstances of the murder and concluded that it was an carried out in a vicious and cruel manner. The BPT determined that the offense was carried out in a dispassionate and calculated manner, and in a manner that demonstrated exceptionally insensitive disregard for human suffering. The motive also was inexplicable or very trivial.

A circumstance tending to indicate unsuitability for parole is that the prisoner "committed the offense in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. §

8

2402(c)(1). The factors to be considered in determining whether that circumstance exists are that there were multiple victims, "[t]he offense was carried out in a dispassionate and calculated manner, such as an execution-style murder," "[t]he victim was abused, defiled or mutilated during or after the offense," "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." 15 Cal. Code Regs. § 2402(c)(1). The BPT considered a circumstance and factors proper under California law.

There was some evidence in the record to support the BPT's determination that the circumstances of the commitment offense indicated unsuitability. The record supported a determination that murder was committed in a very cruel and callous manner. As the San Bernardino County Superior Court stated, "[f]or no reason save his own desire to kill, Petitioner executed an elderly man in a public place. The victim was defenseless and no provocation or rationale for such violence was involved in the circumstances." Resp. Exh. 8, p. 2. The motive for the killing was inexplicable. The BPT identified more than the minimum elements of a second degree murder when it determined that Paluzzi committed the murder in a very cruel manner and with an exceptionally callous disregard for human suffering, as Paluzzi had randomly selected and shot a man, finished putting gas in his car, drove off without paying for his gas and without any attention to the victim, and engaged in a high speed chase the day after the murder that had endangered other persons before he was apprehended, which show that his criminal conduct involved more than the minimum elements of a second degree murder. See Dannenberg, 34 Cal. 4th at 1071. The circumstances of the commitment offense alone provided sufficient evidence to meet the some evidence standard for the BPT's decision to deny parole.

    2.    <u>Pre-Offense Behavior</u>

The BPT also relied on Paluzzi's pre-offense history for its determination that he was not suitable for parole, i.e., he had an escalating pattern of criminal conduct and a history of unstable tumultuous relationships. Paluzzi's criminal record included juvenile hit and run, drug possession, and DUI; his adult criminal record included assault with a deadly weapon, theft and

9

battery. See Resp. Exh. 3. He had previous periods of incarceration, probation and parole.

Consideration of and reliance on Paluzzi's pre-offense criminal history was not improper. Although the prisoner's "previous record of violence" on a victim is a specifically listed circumstance and non-violent criminal history is not specifically listed as a circumstance that tends to indicate unsuitability, 15 Cal. Code Regs. § 2402(c)(2), the list of circumstances in § 2402(c) is non-exclusive, and § 2402(b) specifically allows the BPT to consider a great range of relevant and reliable information, such as the prisoner's "past criminal history, including involvement in other criminal misconduct which is reliably documented." Paluzzi's prior criminal activity could be considered by the BPT as tending to show unsuitability.

The BPT also mentioned Paluzzi's unstable social relationships as a circumstance supporting its decision. Paluzzi had an extensive history of drug abuse before and after he dropped out of high school, and had a close family that he had broken away from in his rebellious youth. A prisoner's history of unstable social relationships is a circumstance listed as among those that tend to show unsuitability, see § 2402(c)(3), although the evidence of unstable social relationships was not strong here. Although Paluzzi had rebelled against his family when he was younger and on drugs, he apparently had mended whatever rift existed and his family was very supportive with regard to his parole plans. See RT 29-31. This unstable social history circumstance would not alone support parole denial, but it was some evidence tending to show unsuitability that, used in conjunction with some other information, would support parole denial.

3.      There Was Enough Evidence To Find Paluzzi Unsuitable

The BPT noted that Paluzzi had various in-prison achievements and good parole plans, but concluded that the positive factors did not outweigh the factors discussed above showing unsuitability. The factors listed by the BPT in support of its determination that Paluzzi was not suitable for parole had some evidentiary support. And the factors were factors that could be considered in determining parole suitability. The San Bernardino County Superior Court's rejection of Paluzzi's insufficient evidence claim was not contrary to or an unreasonable application of the Superintendent v. Hill some evidence standard.

The BPT noted in its decision that the district attorney had opposed parole for Paluzzi. This does not appear to be a circumstance in determining a prisoner's suitability for parole. Rather, the value of the district attorney's input appears to be as a counterweight to Paluzzi's comments attributing the killing to a drug-induced delusion. The district attorney argued vigorously against characterizing the killing as simply the product of drug abuse. The information the district attorney provided was relevant to the circumstances of the offense that the BPT considered, but did not provide an independent basis for denying parole.

The BPT also noted that Paluzzi "still needs some self-help to understand the – to face – in order to face, discuss, understand, and cope with stress in a non-destructive manner, to better understand the causative factors." RT 57-58. Respondent does not argue that this provided a separate basis for the finding of unsuitability, and the state court did not find it to be an additional basis for the finding of unsuitability. Accordingly, this court will not consider this factor either.

## CONCLUSION

For the foregoing reasons, the petition is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: October 20, 2006

_____
SUSAN ILLSTON
United States District Judge